# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISHMAEL ALI BURK, | No. 4:22-CV-01499 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LT. RANKINS, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 9, 2022

Plaintiff Ishmael Ali Burk is a serial *pro se* litigator who is well known to this Court. He is currently incarcerated at the State Correctional Institution in Chester, Pennsylvania (SCI Chester). Burk filed the instant *pro se* Section 1983[1] action concerning alleged Eighth Amendment violations by prison officials at a different prison—SCI Smithfield. Because Burk fails to state a claim for relief, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I. **STANDARDS OF REVIEW**

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[2] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[3] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[4]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[5] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[6] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

---

[2] *See* 28 U.S.C. § 1915A(a).
[3] *Id.* § 1915A(b)(1).
[4] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[5] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[6] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[7]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[8] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[9] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[10] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[11] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]

Because Burk proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[13] This is particularly true when the *pro se* litigant, like Burk, is incarcerated.[14]

---

7 *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
8 *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
9 *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
10 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
11 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
12 *Iqbal*, 556 U.S. at 681.
13 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
14 *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## II. DISCUSSION

Burk's complaint involves events that allegedly occurred in November and December 2020 at SCI Smithfield.[15] Burk's allegations are disjointed, undeveloped, and lack plausibility. He alleges that the following incidents took place:

- Defendant Lieutenant Rankins "forced" him to get a COVID-19 vaccination when he did not want to be vaccinated[16];

- Rankins would "turn his water off" when Burk left his cell without wearing a mask[17];

- Rankins would not let Burk "go to the yard" during December 2020[18];

- Defendant Counselor Showalter told Burk to "stop complaining" and then turned Burk's "air off" causing Burk to be in a cell lacking "air quality" during December 2020[19];

- When Burk complained to defendant Hollibaugh that "he was not getting the right care in prison food and shower [sic]" due to Burk's refusal to wear a mask, Hollibaugh "threatened" Burk that if he did not wear a mask Hollibaugh would be "back with reinforcement[s]"[20];

- In December 2020, Hollibaugh, Rankins, and defendant Garman "forced a mask on" Burk's face[21];

- Burk "was not allowed to take showers or eat during the COVID-19 lock down."[22]

---

[15]  *See* Doc. 1 at 4.
[16]  *Id.*
[17]  *Id.* at 4, 5.
[18]  *Id.* at 4.
[19]  *Id.*
[20]  *Id.* at 5.
[21]  Doc. 1 at 5.
[22]  *Id.* at 5.

4

Burk cites the Eighth, First, Fourteenth, and Second Amendments as his "legal claims," without any explanation or development as to how these rights were allegedly violated.[23] The only conceivable constitutional tort that could be implicated by Burk's pleading is an Eighth Amendment conditions-of-confinement claim, made applicable to the states through the Fourteenth Amendment.[24] However, Burk's scant allegations fail to state such a claim.

### A.   Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[25] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, warmth, or exercise."[26] To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements.[27] Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as

---

[23] *See id.* at 6.
[24] Clearly, the First and Second Amendments are not implicated by Burk's complaint. To the extent that Burk is attempting to raise some other type of constitutional claim under the Fourteenth Amendment, his conclusory allegations are simply insufficient for this Court to ascertain what that claim may be, let alone to plausibly state a claim for relief.
[25] *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).
[26] *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).
[27] *See id.*

a "sufficiently serious" deprivation.[28]  Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[29]  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[30]

Burk's conditions-of-confinement claim fails for multiple reasons.  First, most of the conditions about which he complains do not implicate a "sufficiently serious" deprivation of life's necessities.  For example, although Burk alleges that the water to his cell was turned off for periods of time, he does not allege that he was being denied potable drinking water or use of the bathroom.  Burk also claims that he was not permitted to go to the yard in December 2020, but such a minor hardship does not rise to the level of a sufficiently serious deprivation.  As to the claim that Showalter turned Burk's "air off" and that Burk was "without air for the month of December," Burk does not explain what this means or how it implicates a constitutionally violative condition.

Second, as to Burk being forced to wear a mask, not being permitted to leave his cell without wearing a mask, or having a mask applied to his person, these claims demonstrate the opposite of deliberate indifference to a serious risk of harm.  No one can reasonably question the gravity of the COVID-19 pandemic or its

---

[28]   *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[29]   *Id.* (citing *Farmer*, 511 U.S. at 834).
[30]   *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).

devastating effects in the confines of the prison system.[31] The fact that SCI Smithfield officials were taking pains to ensure that inmates were properly masked when leaving their cells and allegedly not permitting unmasked inmates to mingle with other inmates in shared spaces demonstrates that prison officials were acutely concerned with prisoner health and safety, not deliberately indifferent to it.

Finally, Burk's claims lack plausibility. As to his allegation that Rankins "forced" him to get vaccinated, that claim is directly contradicted by Pennsylvania Department of Corrections (DOC) policy, which indicates that "[v]accination among the inmate population is voluntary" and that approximately 10 percent of inmates remain unvaccinated.[32] And Burk does not explain what "forced" means; it could mean that prison officials incentivized or encouraged vaccinations among the inmate population, or it could mean that Burk was literally held down and vaccinated against his will. Burk, like in the rest of his complaint, does not provide any factual details that would clarify this issue.

Similarly, his claim that he "was not allowed to take showers or eat during the COVID-19 lock down" is both implausible and fatally underdeveloped. Burk

---

[31] *See, e.g.*, *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330-32 (3d Cir. 2020) (describing COVID-19 pandemic, prison conditions, and mitigation efforts by government); PA. DEP'T OF CORR., COVID-19 Dashboard, p.4, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited Dec. 8, 2022) (noting that there have been 166 COVID-19-related inmate deaths in Pennsylvania state prisons and 12 COVID-19-related staff deaths).

[32] *See* PA. DEP'T OF CORR., COVID-19 Vaccine, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited Dec. 8, 2022). The Court may take judicial notice of information posted on official public websites of government agencies. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

does not explain how long the lockdown lasted. If it was weeks or months, Burk would have suffered serious injury or death from not being permitted to eat, so the claim would lack plausibility. If it was only a few days, then his claim of not being permitted to shower would not implicate a sufficiently serious deprivation. Moreover, Burk does not allege which prison official or officials were deliberately indifferent to his claim of lack of food and showers.

In sum, Burk's allegations are woefully inadequate to plausibly state an Eighth Amendment conditions-of-confinement claim. His complaint, therefore, must be dismissed.

### B.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[33]  Burk fails to plead facts that would plausibly demonstrate unconstitutional conditions of confinement. Nevertheless, because he may be able to cure his pleading deficiencies as to some Defendants, the Court will permit him to file an amended complaint—in accordance with this Memorandum—in the event that he can aver facts that would plausibly state personal involvement and a constitutional violation. Burk is admonished that, if he once again fails to provide adequate factual allegations regarding the conditions to

---

[33]   *Grayson*, 293 F.3d at 114.

which he was subjected, the length of those conditions, and who was deliberately indifferent to them, the Court will dismiss this action with prejudice.

## III. CONCLUSION

Based on the foregoing, the Court will dismiss Burk's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because it fails to state a claim upon which relief may be granted. Burk, if he is able, may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge